[No. 2977–3. Division Three. May 17, 1979.]

GRACE HALLSTED, *Appellant,* v. BLUE MOUNTAIN CON-VALESCENT CENTER, INC., ET AL, *Defendants,* ASSOCIATED INDEMNITY CORPOR-ATION, *Respondent.*

*Lutcher & Llewellyn* and *Gregory L. Lutcher*, for appellant.

*James K. Hayner*, for respondent.

ROE, J.—Plaintiff Grace Hallsted appeals a summary judgment[1] dismissing her action against Associated Indemnity Corporation.

The parties stipulated to the pertinent facts which may be summarized as follows: Plaintiff purchased a homeowner's policy from defendant which provided in part:

PERILS INSURED AGAINST

This policy insures under:

COVERAGE A—DWELLING and COVERAGE B—APPURTENANT STRUCTURES against all risks of physical loss to the property covered (and under COVERAGE D, ADDITIONAL LIVING EXPENSE resulting from such loss), except as otherwise excluded or limited.

COVERAGE C—UNSCHEDULED PERSONAL PROPERTY against direct loss to the property covered by the following perils as defined and limited, except as otherwise excluded.

. . .

15. Accidental discharge, leakage or overflow of water or steam from within a plumbing, heating or air conditioning system or from within a domestic appliance but excluding loss to the appliance from which the water or steam escapes. This peril does not include loss caused by or resulting from freezing.

. . .

ADDITIONAL EXCLUSIONS

This policy does not insure against loss: Under Coverages A, B and C (and under Coverage D—Additional Living Expense resulting from such loss):

1. Caused by, resulting from, contributed to or *aggravated* by any of the following:

---

[1]The summary judgment contains a CR 54(b) certificate of finality and is appealable as a matter of right pursuant to RAP 2.2(c).

. . .
b. water which backs up through sewers or drains; . . .
(Italics ours.) The sewer under the street in front of plaintiff's home became clogged. As a result, the sewage backed up through the sewer pipes to plaintiff's home and ultimately flowed out of the commode in her second floor bathroom.

The sole issue is whether the ADDITIONAL EXCLUSIONS clause is controlling so as to exclude coverage.

Plaintiff contends, relying on *World Fire & Marine Ins. Co. v. Carolina Mills Distrib. Co.*, 169 F.2d 826, 4 A.L.R.2d 523 (8th Cir. 1948), that when the scope of coverage clause for Coverages A, B, and C (particularly paragraph 15 of the latter) is read in conjunction with the ADDITIONAL EXCLUSIONS clause 1(b), an ambiguity as to the extent of coverage results which should be resolved in her favor, *i.e.*, the exclusionary clause does not apply when there is any accidental discharge, leakage, or overflow of water from the plumbing system regardless of whether the discharge is the result of water backing up through the sewer or a malfunction of the system. We *disagree*.

█ In construing a policy, a court seeks to determine the intent of the parties, expressed in the contract, and generally will give the language used its popular and ordinary meaning. *Safeco Ins. Co. of America v. McManemy*, 72 Wn.2d 211, 432 P.2d 537 (1967).

The exclusionary clause is unambiguous—damage caused by water which backs up through the sewers (plural) is not covered. Obviously, this clause precludes protection from the instant peril under Coverages A and B. The only question as to its applicability arises when it is read in conjunction with Coverage C, Paragraph 15. However, that paragraph is directed to water which discharges, leaks, or overflows *from within* the insured's plumbing system. In the instant case, the water that caused plaintiff's injury came from outside the plaintiff's plumbing system, *i.e.*, from the City of College Place's sewer system. Nothing within plaintiff's system malfunctioned (as was the case in

*World Fire & Marine Ins. Co. v. Carolina Mills Distrib. Co., supra*—broken cap; *Koncilja v. Trinity Universal Ins. Co.*, 35 Colo. App. 27, 528 P.2d 939 (1974)—broken water pipe; *Hartford Accident & Indem. Co. v. Phelps*, 294 So. 2d 362 (Fla Dist. Ct. App. 1974)—underground leak in water pipe; *King v. Travelers Ins. Co.*, 84 N.M. 550, 505 P.2d 1226 (1973)—rupture of water line; and *Kraftsow v. Brown*, 172 Pa. Super. 581, 94 A.2d 183 (1953)—uncapped outlet on drain pipe; relied upon by plaintiff) so as to cause the accidental discharge, leakage, or overflow.

When the ADDITIONAL EXCLUSIONS clause and paragraph 15 are read together, it is apparent they are not contradictory. If the cause of the discharge is in the plaintiff's system, *e.g.*, a clogged sink drain which causes water in the plumbing system to overflow, the ADDITIONAL EXCLUSIONS clause does not apply. If the cause of the discharge is outside that system, *e.g.*, a clogged sewer pipe which forces water from outside plaintiff's system to overflow, then the clause is applicable even though the water flowed through plaintiff's plumbing system. *Jackson v. American Mut. Fire Ins. Co.*, 299 F. Supp. 151 (M.D.N.C. 1968), *aff'd* 410 F.2d 395 (4th Cir. 1969) is identical in facts and nearly identical in policy language. *See also Brown v. Farmers Auto. Ins. Ass'n*, 106 Ill. App. 2d 360, 245 N.E.2d 260 (1969); *Dallas Handbag Co. v. Royal Indem. Co.*, 390 S.W.2d 863 (Tex. Civ. App. 1965). It is unfortunate that the latter possibility is what occurred here, but we cannot emasculate the clear and unambiguous meaning of a contract to extend coverage. The exclusionary clause in the policy must mean something. We cannot simply ignore it or read it out of the policy.

In reaching this conclusion, we have not overlooked *Aetna Fire Underwriters Ins. Co. v. Crawley*, 132 Ga. App. 181, 207 S.E.2d 666 (1974), where summary judgment for the insurer was denied. The insuring and exclusionary language in the *Aetna* policy was similar in many respects to that of the case at bar. The opinion overlooked the word "within" in discussing coverage, and excluded coverage for

a clogged drain which would be covered by our interpretation of the instant policy. Courts should use a common sense approach to policies and not create confusion to fasten liability.

The judgment is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied June 12, 1979.

Review denied by Supreme Court September 7, 1979.